O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMMA S.,[1] | Case No. 5:18-cv-02338-MAA |
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER** |
| ANDREW M. SAUL,[2] Commissioner of Social Security, | |
| Defendant. | |

On October 31, 2018, Plaintiff filed a Complaint seeking review of the Social Security Commissioner's final decision terminating her Supplemental Security Income benefits, which she had been receiving pursuant to Title XVI of the Social Security Act. This matter is fully briefed and ready for decision. For the reasons discussed below, the Commissioner's final decision is affirmed, and this action is dismissed with prejudice.

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] The Commissioner of Social Security is substituted as the Defendant pursuant to Federal Rule of Civil Procedure 25(d).

# PROCEDURAL HISTORY

On October 10, 2012, the Commissioner found that Plaintiff was disabled beginning on May 11, 2012 due to an organic mental disorder and epilepsy. (Administrative Record [AR] 18, 92.) The Commissioner found that Plaintiff's mental conditions met the requirements of Listing 12.02 (Organic Mental Disorders). (AR 87-88.)

On November 22, 2016, the Commissioner determined that Plaintiff was no longer disabled as of November 1, 2016. (AR 18, 105.) On reconsideration, a disability hearing officer upheld the decision. (AR 18, 138-47.) Plaintiff requested a hearing before an administrative law judge ("ALJ"). (AR 151.) At a hearing held on December 11, 2017, at which Plaintiff waived her right to counsel, the ALJ heard testimony from Plaintiff, Plaintiff's son, and a vocational expert. (AR 33-81.) In a decision issued on February 6 , 2018, the ALJ found that Plaintiff's disability had ended as of November 1, 2016. (AR 18-28.)

The ALJ applied the evaluation for medical improvement, as set out in 20 C.F.R. § 416.994, to make the following findings. (AR 19.) Since November 1, 2016, Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment. (AR 20.) Since November 1, 2016, there had been medical improvement. (AR 22.) The medical improvement was related to the ability to work because Plaintiff no longer met or equaled the requirements of a listed impairment. (*Id.*) Since November 1, 2016, Plaintiff continued to have severe impairments consisting of "epilepsy/seizure disorder" and an organic mental disorder. (AR 23.) Beginning on November 1, 2016, Plaintiff had a residual functional capacity for medium work with additional non-exertional limitations including a limitation to simple, routine, and repetitive tasks. (*Id.*) Although Plaintiff had no past relevant work (AR 26), her residual functional capacity enabled her to perform other work in the national economy, in the occupations of "marker, laundry," "linen room attendant," and "stores, laborer"

(AR 27). Thus, the ALJ concluded that Plaintiff's disability ended on November 1, 2016 and that she had not become disabled again since that date. (*Id*.)

On October 3, 2018, the Appeals Council denied Plaintiff's request for review. (AR 1-6.) Thus, the ALJ's decision became the final decision of the Commissioner.

## DISPUTED ISSUE

The disputed issue here is "whether the ALJ's conclusion that substantial medical improvement occurred on November 1, 2016 is supported by substantial evidence." (ECF No. 25, Parties' Joint Stipulation ["Joint Stip."] at 4.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's final decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's interpretation must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

///

///

**DISCUSSION**

A.  **Legal Standard.**

Once a claimant is found to be disabled, a presumption of continuing disability arises in her favor. *See Bellamy v. Secretary of Health & Human Services*, 755 F.2d 1380, 1381 (9th Cir. 1985) (citing *Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir. 1983)).  To rebut the presumption, the Commissioner has the burden to come forward with evidence of medical improvement.  *See Murray*, 722 F.2d at 500.

Medical improvement "must be based on changes (improvement) in the symptoms, signs, or laboratory findings associated with [the claimant's] impairment(s)." *See* 20 C.F.R. § 416.994 (b)(1)(i).  An ALJ must "compare the medical evidence used to determine that the claimant was disabled with the medical evidence existing at the time of the asserted medical improvement." *Attmore v. Colvin*, 827 F.3d 872, 873 (9th Cir. 2016); *see also* 20 C.F.R. § 416.994 (b)(1)(vii) (an ALJ must compare "the current medical severity" of the claimant's impairment to the medical severity of the impairment at the time of the "most recent favorable medical decision" that she was disabled).  The evidence of medical improvement must satisfy the "substantial evidence" standard.  *See Murray*, 722 F.2d at 500.

B.  **Analysis.**

1.  **Substantial Evidence of Medical Improvement.**

The ALJ compared the evidence existing at the time of Plaintiff's most recent favorable medical decision on October 10, 2012 with the medical evidence existing at the time of her asserted medical improvement on November 1, 2016.  (AR 20.) Based on an independent review of the record, the Court finds that substantial evidence supported the ALJ's determination that Plaintiff had experienced medical improvement such that she was no longer disabled.

///

The ALJ first compared the symptom evidence relating to Listing 12.02 (Organic Mental Disorders). On October 10, 2012, Plaintiff had been found to have met the requirements of this listing based on (1) satisfaction of the "A" criteria due to a memory impairment and a loss of at least 15 I.Q. points, plus (2) satisfaction of the "B" criteria due to marked difficulties in the areas of maintaining social functioning and maintaining concentration, persistence, or pace. (AR 87-88.) As of November 1, 2016, however, the ALJ found that Plaintiff no longer met the requirements of the listing because the two "B" criteria were no longer satisfied. (AR 20-21.) The ALJ found that as of November 1, 2016, Plaintiff had only mild difficulties in social functioning, based on her documented ability to interact with others; and had only mild difficulties in concentration, persistence, or pace, based on mental status examinations showing a normal attention span and ability to concentrate as well as evidence of her ability to answer questions during an interview. (AR 21 [citing AR 219-25, 336-42, 343-75, 397-403, 404-06].) The evidence cited by the ALJ showed that Plaintiff was friendly and cooperative (AR 224, 351, 357), was able to understand and answer questions (AR 224), and displayed a normal attention span and ability to concentrate (AR 341). This was substantial evidence of an improvement in symptoms such that Plaintiff no longer satisfied the "B" criteria of Listing 12.02 and thus no longer met all the requirements of that listing.

The ALJ also cited additional evidence of symptoms, signs, or laboratory findings in between the comparison dates of October 10, 2012 and November 1, 2016. During that period, two treating physicians reported normal findings. One of the treating physicians, Dr. Earle, conducted examinations in December 2015 (AR 357-60) and May 2016 (AR 351-54). During those examinations, Plaintiff displayed normal symptoms or signs from a neurological standpoint: an appropriate affect, normal speech, normal cranial nerves bilaterally, normal sensory exam, normal bulk and contour, normal tone, normal muscle strength, and normal

coordination. (AR 351, 358.) The other treating physician, Dr. Gallegos, likewise reported a normal examination in October 2016. (AR 340-41.) During that examination, Plaintiff was rated normal in every neurological area Dr. Gallegos measured. (AR 341.) And a few months later, in April 2017, a computerized tomography scan of Plaintiff's brain was unremarkable. (AR 402.) This was substantial evidence of an improvement in the symptoms, signs, or laboratory findings associated with Plaintiff's impairments. *See* 20 C.F.R. § 416.994 (b)(1)(i).

In addition to this evidence, the ALJ cited a July 2016 investigative report that was generated in response to an allegation of Plaintiff's possible malingering. (AR 21 [citing AR 219-25].) According to that report, investigators from the Los Angeles County District Attorney's Office visited Plaintiff at her home and, using a ruse for the visit, interviewed her. (AR 223.) Plaintiff told the investigators that she was the caretaker for her 92-year-old grandmother; did all the cooking, household cleaning, and shopping for her family; managed all of her family's finances; drove for her family members; and cared for three puppies. (AR 223-24.) The investigators observed that Plaintiff was able to concentrate, recall information, and answer questions, and that she did not exhibit any unusual behavior. (AR 224.)

Finally, the ALJ cited evidence of Plaintiff's failure to seek treatment and daily activities. The ALJ found that Plaintiff was given a referral to a neurologist in June 2015 but did not go. (AR 25 [citing AR 353].) The ALJ further found that Plaintiff, by her own account, was able to care for her own personal needs and make sure that her daughter attended school. (AR 25 [citing AR 67, 69].) This evidence further supported the ALJ's finding of medical improvement. *See McCalmon v. Astrue*, 319 F. App'x 658, 660 (9th Cir. 2009) (affirming finding of medical improvement based on "affirmative medical evidence of improvement, the long periods of time without seeking medical help, and [the claimant's] daily activities").

///

In sum, substantial evidence supported the ALJ's determination that Plaintiff was no longer disabled because of medical improvement.

### 2. Plaintiff's Contentions.

Although Plaintiff raises several points challenging the ALJ's finding of medical improvement, they do not warrant a different result. The Court addresses Plaintiff's contentions in turn.

Plaintiff contends that her asserted level of activity remained "virtually the same" from the time she was awarded benefits in 2012 until the time they were terminated in 2016. (Joint Stip. at 5 [citing AR 311-17, 225-25].) To the contrary, the asserted level of activity for those two dates was different. In 2012, Plaintiff asserted that she "needs help in making meals, doing household chores, and shopping" and "is able to drive sometimes." (AR 313.) In 2016, Plaintiff asserted that she was the caretaker for her 92-year-old grandmother; did all the cooking, household cleaning, and shopping for her family; managed her family's finances; drove for the entire family; and cared for three puppies. (AR 223-24.)

Plaintiff next contends that the investigative report of her possible malingering was prepared by people of unknown qualifications and that the report should have been followed by a consultative examination. (Joint Stip. at 6 [citing AR 222-25].) To the contrary, the investigative report was material evidence that the ALJ was allowed to consider, regardless of the investigators' qualifications. *See* 20 C.F.R. § 416.1450(c) ("[T]he administrative law judge may receive any evidence at the hearing that he or she believes is material to the issues, even though the evidence would not be admissible in court under the rules of evidence used by the court."); *Richardson*, 402 U.S. at 400 (recognizing that "strict rules of evidence, applicable in the courtroom, are not to operate at social security hearings so as to bar the admission of evidence otherwise pertinent"); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 n.4 (9th Cir. 2005) ("The Federal Rules of Evidence do not apply to the

7

admission of evidence in Social Security administrative proceedings."). Moreover, the ALJ had the discretion not to order a consultative examination if he believed, as he apparently did, the existing record was sufficient to resolve the issue of medical improvement. *See Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001) (an ALJ has "broad latitude in ordering a consultative examination").

Plaintiff next contends that the ALJ's selection of a medical improvement date of November 1, 2016, which was several months after the investigative report was written in July 2016, "appears to be a random date with no evidentiary support whatsoever." (Joint Stip. at 6.) To the contrary, the record permits an inference that the ALJ reasonably selected the date of November 1, 2016 because the symptoms, signs, or laboratory findings associated with Plaintiff's impairments substantially established medical improvement before that date. *See* 20 C.F.R. § 416.994 (b)(1)(i). As discussed above, Plaintiff repeatedly displayed normal neurological symptoms and signs in 2015 and 2016, prior to November 1, 2016. (AR 341, 351, 358.) And even though the investigative report was written months before November 1, 2016, the ALJ was permitted to give Plaintiff the benefit of assigning the latest possible date of medical improvement. *See Mosinski v. Astrue*, 2011 WL 2580353, at *7 (N.D. NY Mar. 7, 2011) ("The ALJ gave Plaintiff the maximum benefit of this inference in selecting the August 1, 2003 date, even though there was evidence in the record to suggest medical improvement occurred prior to that date."); *see also Rolston v. Astrue*, 298 F. App'x 661, 662 (9th Cir. 2008) (substantial evidence supported an ALJ's finding of medical improvement in October 2003 where, for example, the record showed marked improvement from surgery in September 2003).

Plaintiff next contends that the ALJ erred by failing to consider evidence of Plaintiff's migraine headaches. (Joint Stip. at 7.) Because Plaintiff's initial award of disability benefits was not based on migraine headaches, they were not relevant to the medical improvement analysis. *See Nathan v. Colvin*, 551 F. App'x 404, 406

(9th Cir. 2014) ("[A]n ALJ undertaking a continuing disability determination is required to consider whether there is any improvement for those impairments that were 'present at the time' of the last finding of disability.") (citing 20 C.F.R. § 416.994(b)(1)(i)). Plaintiff's allegation of migraine headaches became relevant only later, when the ALJ considered Plaintiff's ability to work after medical improvement had occurred. *See* 20 C.F.R. § 416.994(b)(1)(v) ("When [considering your ability to engage in substantial gainful activity], we will consider all your current impairments not just that impairment(s) present at the time of the most recent favorable determination."). Here, however, no statement in the record, from either Plaintiff or her physicians, ever specified how her migraine headaches limited her ability to work. (AR 61-62, 400, 406.) Thus, evidence that Plaintiff experienced migraine headaches, by itself, was not enough to call into question the ALJ's non-disability determination. *See Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 692 n.2 (9th Cir. 2009) (where the claimant fails to detail what limitations follow from an impairment, "[w]e reject any invitation to find that the ALJ failed to account for [the claimant's] injuries in some unspecified way.").

      Plaintiff next contends that because she was not represented by counsel at the administrative hearing, she did not know how to explain to the ALJ that her seizures permit her to function normally when she is not experiencing them. (Joint Stip. at 7.) But Plaintiff waived her right to counsel at the administrative hearing. (AR 40.) For such a waiver to be valid, the Commissioner's regulations required that she be notified in advance in writing of her "options for obtaining an attorney" and the legal services organization that may provide "legal representation free of charge." *See* 20 C.F.R. § 416.1506. Plaintiff received such notice, both in writing (AR 149, 153, 156-61) and again at the hearing (AR 39), rendering her waiver valid. And even assuming for purposes of argument that Plaintiff's waiver was invalid, it still would not have resulted in prejudice or unfairness in the proceeding. *See Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985) ("Lack of counsel does not

affect the validity of the hearing unless the plaintiff can demonstrate prejudice or unfairness in the administrative proceedings."). Despite the absence of counsel at the hearing, Plaintiff was not prevented from explaining fully the nature of her seizures (AR 54, 59-61) or otherwise testifying about any of her limitations. Nothing in the transcript of Plaintiff's testimony suggests that she did not understand the ALJ's questions or was unable to communicate. (AR 35-69.) Thus, the absence of counsel did not result in prejudice or unfairness.

Plaintiff next contends that the ALJ erred by failing to consider the sedating effects of her medication. (Joint Stip. at 7 [citing AR 24, 253, and 266].) Plaintiff alleged that her medication makes her very drowsy such that she is "knocked out." (AR 68, 253, 266.) But the ALJ rejected Plaintiff's subjective allegations about her symptoms (AR 25-26), which Plaintiff does not challenge here. And the medical record otherwise contains only a passing mention of medication side effects: in 2012, a physician observed that sedation was a possible side effect of Plaintiff's phenobarbital (AR 322), but subsequent records showed that Plaintiff continued taking the medication without complaining of side effects (AR 332, 340, 349, 350, 351, 355, 356, 359). This evidence did not demonstrate that Plaintiff's side effects were severe enough to interfere with her ability to work. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001) (holding that an ALJ did not err in failing to credit complaints of medication side effects where there were only "passing mentions" of side effects without "evidence of side effects severe enough to interfere with [the claimant's] ability to work").

Plaintiff next contends that the ALJ erred by failing to discuss evidence of her November 2017 visit to the emergency room. (Joint Stip. at 8 [citing AR 43].) To the contrary, the ALJ did discuss this evidence. (AR 26.) Plaintiff testified that she had visited the emergency room because she kept falling down. (AR 43.) But the emergency room records showed that Plaintiff's dilantin level was measured as "very high" and that she voluntarily left the emergency room before receiving

treatment, with a recommendation that she stop taking dilantin and return to the hospital for continued monitoring. (AR 407-08.) A subsequent note from December 2017 shows that Plaintiff's dilantin level had decreased and that her prescription therefore was adjusted so she could restart it. (AR 408.) This evidence arising from the emergency room visit did not render the ALJ's finding of medical improvement erroneous or lacking in substantial evidence.

Plaintiff next contends that the ALJ's residual functional capacity for medium work is absurd given that, at the time of the hearing, she weighed only 88 pounds. (Joint Stip. at 8 [citing AR 46].) The strength activities of medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objecting weighing up to 25 pounds." *See* 20 C.F.R. § 416.967(c). Here, the ALJ determined that Plaintiff did not have any physical impairment that would cause any restrictions in her physical exertional abilities. (AR 23.) Plaintiff does not dispute this finding. Thus, the ALJ's residual functional capacity determination for medium work was warranted under the Commissioner's rules, despite Plaintiff's small physical stature. *See* 20 C.F.R. § 416.994(b)(1)(iv) ("A person who has no impairment(s) would be able to do all basic work activities at normal levels; he or she would have an unlimited functional capacity to do basic work activities.").

Plaintiff finally contends that the ALJ erred by failing to consider the lay witness testimony of Plaintiff's son. (Joint Stip. at 8.) Plaintiff's son testified that Plaintiff had memory problems because of her medications and that he had to remind her to do things. (AR 71.) The ALJ rejected this lay testimony because "numerous medical examinations revealed normal mental status evaluations, including an ability to remember items and repeat phrases, as well as an appropriate fund of knowledge" and because Plaintiff "was able to recall information and answer questions appropriately" when interviewed by the investigators. (AR 21 [citing AR 219-25, 336-42, 343-75, 397-403, 404-06].) This was a germane reason to discount the lay witness's testimony. *See Vincent v. Heckler*, 739 F.2d 1393,

1395 (9th Cir. 1984) (*per curiam*) (conflict with medical evidence is a legally sufficient reason for rejecting a lay witness's testimony); *see also Bayliss*, 427 F.3d at 1218 (same) (citing *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)).

## ORDER

It is ordered that Judgment be entered affirming the decision of the Commissioner of Social Security and dismissing this action with prejudice.

DATED:  December 23, 2019

_____
MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE